Call the first case for oral argument this morning, which is Verde-Rodriguez v. Faber. Mr. Drum. Proceed. Good morning, Your Honors. May it please the Court, my name is Jesse Drum. I represent Petitioner-Appellant Verde-Rodriguez in this matter, along with my co-counsel, Stephanie Knoll, who will be presenting the habeas portion of this argument. May we reserve two minutes for rebuttal, please? Granted. Thank you. This case revolves around an immigration court hearing in 1998, which we would like the Court to take a very close look at. Am I correct that you are not challenging the reinstatement order, over which it would appear that we clearly would have jurisdiction, but that what you're challenging is the underlying October 28, 1998, removal order? We're challenging the proceedings, Your Honor. Well, you have to appeal from an order. Correct. We believe that the reinstatement of that order grants us another opportunity to attack the proceedings themselves. With that in mind, we'll hear your argument, certainly. Thank you. Mr. Verde-Rodriguez was a native lawful permanent resident of the United States as of 1991. In 1998, the INS issued a notice to appear, charging Verde with an aggravated felony for DUI. Verde appeared in an INS detention facility courtroom with seven other Mexican nationals. After the entire group purportedly waived their rights of representation, eight removal hearings were conducted. If you read the text of Verde's hearing from a non-English speaking immigrant's point of view, you will understand the issues in this case. You can see the dangers in this type of setting. I read the transcript just this past weekend. It's not a long transcript, as you know. But what defect do you see in that transcript? Frankly, from having read such transcripts over the years, I thought that the IJ was quite methodical. He, first of all, had, as was necessary, a translator there, an interpreter there. He asked each question in a modulated fashion, often broke up the question so that it could be translated, a part of the question phrase and then another phrase in the question. Where do you see the defect in the procedure that was followed by the IJ? Well, the regulations require the judge to explain the charges to the immigrant in a non-technical manner. And by telling Verde that he has way too many DUIs and that he's therefore an aggravated felon is not a non-technical way that a reasonable How would you more clearly state that if you were the immigration judge in this case? Well, the judge is required to, I mean, our system relies on them to explain the law accurately to the aliens so that they can know what facts are relevant and be able to fashion a defense or, you know, or be made aware of their ability to appeal. Yeah, but how would you say it? If you were the immigration judge and you had Mr. Rodriguez in front of you, what would you say? I would have said something that would illuminate the relevant facts that make something a crime of violence and therefore an aggravated felony. That, you know, having way too many DUIs has never been held to be an aggravated felony. It's, you know, the other factors that are there. So he, you know, he concluded for Verde that he was an aggravated felon and should therefore be deported. Well, what was the condition of the law at the time relative to aggravated felonies? In the Ninth Circuit? At that time. At that time. The only law at the time was the Magallanes case, which is a BIA decision that said that an aggravated DUI, along with driving under a suspended or revoked license, was considered an aggravated felony crime of violence. So the IJ did not misstate the law at any point in that column, did he? He did not misstate the law, but he concluded for Verde that- What's technical about way too many felonies or way too many aggravated felonies or way too many DUIs? That simply wasn't the law of the time, that the IJ concluded wrongly that the fact that he had way too many makes him an aggravated felon, although that was not the law at the time. The law at the time was the BIA decision and Enrique Magallanes that said that an aggravated DUI with a revoked or suspended license constituted an aggravated felony. But how is that wrong? So he had way too many singular convictions that would have constituted an aggravated felony, right? Because it's not really relevant that there were way too many. The relevance is in the DUI that he was presently being charged with. Let me take you to another question relative to the immigration proceedings. Your brief cites frequently throughout the Leslie case. Yes. This case is not Leslie, is it? This case isn't even close to Leslie, is it? We believe it's analogous in that in the Leslie case said that where it held that a failure to adhere to regulations constitutes a due process violation. Okay. But what would that failure have been? I was on the Leslie panel. And in Leslie, didn't the alien signal or ask that he wanted counsel? Wasn't that an explicit request that we don't have here? I'm not intimately familiar with the facts of that proceeding. Can I ask you, one of the assignments of error here, you said was an error anyway, was that the list of service providers was in English. Is the list in the record? Because I don't think I could find it. I'm not sure of that. I know ‑‑ I think it is. I think it was referred to in the appellee's brief. Okay. And the next thing is maybe we're backtracking a little bit. Just in terms of jurisdiction, yeah, of course, the Real ID Act was passed, and there's a 30‑day limitation. I guess if the Kulkovich case is applied here, where they granted 30 days after the Real ID Act was passed, was there some reason why your client couldn't have also filed for petition for a hearing within 30 days after the Real ID Act was passed? He was in Mexico at the time. I mean, he was deported the day of his removal proceeding in 1998. But don't you think there's an issue with ‑‑ I mean, if your argument's taken to its logical conclusion, couldn't folks just go over the border, come back, and then their appeal rights renewed? We believe that his reinstatement order opened up another opportunity, another 30‑day window, for him to attack the underlying proceeding. But couldn't then every person with an order against them bounce over the border, come back, and then have a new 30 days? We submit that this is a very narrow standard, only applicable in the most egregious of circumstances, and we think that this scenario fits that narrow standard, where his underlying removal proceeding was so fundamentally flawed that he never got his bite at the apple, per se. Yeah, but actually, you're saying only under egregious circumstances, but on the other hand, the government may look at this as an egregious circumstance, in that only by virtue of his illegal reentry is he getting another bite at the apple, an untimely bite at the apple. That may be true, Your Honor, however, he... Could Congress have intended that? I believe Congress's intent was to give every alien one bite at the apple, not two, and we argue that Verity never even had his bite at the apple, because of the underlying removal proceeding and how inappropriate it was, and how inaccurately and improperly his charges were described to him. Counsel, I believe Section 1252A2D is applicable here for jurisdictional purposes, isn't it? Judge Chigaris has asked you about jurisdiction, and I'd like to follow up on that. He asked about the 30-day deadline, but I'd like to ask about the exhaustion requirement, because it seems to me that the other than this section, parenthetical, in 1252A2D, it implicates both the 30-day deadline and the D-1 exhaustion requirement. Your client did not exhaust administrative remedies here, did he? Your Honor, my time is up. Is it okay if I answer your question first? You may answer, and then we'll have you back. Can you repeat the essence of your question? I'm not sure. In addition to the 30-day deadline that would seem to have been in the amendment that Congress brought about to jurisdiction, in addition to the 30-day deadline, it seems to have retained and incorporated an exhaustion requirement in 1252A2D. And so far as I can tell, your client did not exhaust remedies through the immigration process, through the BIA. That's correct, Your Honor. But we submit that he didn't have a chance to, because any reasonable person in his position would have assumed that any appeal of the immigration court's decision that he was an aggravated felon would have been futile. I mean, he was essentially railroaded into that status. All right, Mr. Drum. Thank you. We'll have you back on rebuttal. Thank you very much. Ms. Noll? May it please the Court. Good morning, Your Honors. My name is Stephanie Noll, and I will be addressing the question whether Verde is entitled to habeas relief. Assuming that relief is not available to Verde by means of a petition for review, Verde should be granted habeas relief. The Real ID Act provides that a petition for review filed with an appropriate court of appeals shall be the sole and exclusive means for judicial review of a final order of removal. However, both Sections 1252A5 and 1252B9 of the Real ID Act apply by virtue of their explicit terms only to those cases in which an alien seeks judicial review of a final order of removal. Now, this circuit, along with the Ninth Circuit, has held that where an alien does not challenge the final order of removal but rather challenges the underlying administrative proceedings, the jurisdiction stripping provisions of the Real ID Act do not apply, and the District Court retains habeas jurisdiction. Doesn't our Bonhametry case hold otherwise? Well, my understanding of that case, Your Honor, is that the Court never reached the merits of the case, and the case was essentially tossed out because the alien failed to exhaust his administrative remedies. There are two Ninth Circuit cases, Singh and Tapia-Fiero, which also distinguish between actual challenges to removal orders and challenges that arise independently. In Singh, the Ninth Circuit held that a narrow claim of ineffective assistance of counsel cannot be construed as seeking judicial review of a final order of removal, notwithstanding an ultimate goal or desire to overturn that final order of removal, and therefore fell outside of the jurisdiction stripping provisions of the Real ID Act. Let's look at Third Circuit law, and you have relied upon Kulkovich in your brief. How does Kulkovich help you here? So Judge Conte felt that Verdi complied with the spirit of Kulkovich by filing a petition for habeas within 30 days of his first apprehension following enactment of the Real ID Act. She deemed his habeas petition to be a timely filed petition for review. However, there are also Third Circuit cases which acknowledge this exception in habeas, that where the alien does not challenge the final order of removal, but challenges the underlying administrative proceedings, that the district court retains habeas jurisdiction. What are those cases? The three cases that this circuit has analyzed are Kumarasamy, Nautica, and Chaza. It is the case that in Kumarasamy and Chaza, there was no final order of removal ever entered, and therefore the alien could not challenge it. However, in Nautica, to the extent that the alien sought declaratory and injunctive relief directed to the denial of his application for asylum, that claim did not fall within the jurisdiction stripping provisions of the Real ID Act, and the district court retained habeas jurisdiction. Let me ask you a question. If you're correct, is this case properly before us, or should it be before the Ninth Circuit? Well, it's up to this court to decide whether or not habeas jurisdiction is appropriate, and in that case, could remand to the district court. However, we are seeking the relief that the alien in Tapia Fierro sought, which is essentially a new removal proceeding altogether. In Tapia Fierro, the Ninth Circuit applied Tsing, and found that the immigration judge misstated the law with respect to the term aggravated felony. The immigration judge in Tapia Fierro failed to adequately inform the alien of his right to appeal and the consequences of waiving that appeal. Materially, the facts are identical in this case. The infirmities of the removal proceeding included three major problems. First, the immigration judge failed to comply with federal regulations governing removal proceedings, and that he failed to advise Verde as to the availability of free legal services, and also failed to explain the charges in the notice to appear in non-technical language. The immigration further misstated the status of the law as it existed at the time by saying that DUI conclusively constituted an aggravated felony. The IJ here did not misstate the law as it existed at the time, did he? Your Honor, there was no Ninth Circuit precedent at the time saying that. So he couldn't misstate it. But there was BIA precedent at the time. There was BIA precedent. Which was consistent with what he instructed, correct? What we believe that the immigration judge should have done is said, you know, listen, I'm bound by this BIA decision, which says that DUI may be an aggravated felony, but you may want to speak with an attorney and this is an appealable issue. In that case, Should a judge be in the position where he or she speculates every time there might be an issue that would provide a basis to circumvent a set precedent guiding that judge? Well, it's not. Should that be the role of a judge? It's not the judge's job, obviously, to act as counsel in that circumstance. But by saying that DUI conclusively constituted an aggravated felony at the time was incorrect. And there was BIA precedent, but there was no Ninth Circuit precedent saying as much. And for all we know, had Verde, you know, gotten the opportunity to appeal or hadn't been led to believe that his appeal would have been futile, we may have seen, you know, Verde versus Ashcroft instead of Leocal versus Ashcroft, which pronounced that DUI is not an aggravated felony per se. Can I ask you a question? Maybe it's a follow-up to my prior question, but I noticed your brief, which was excellent. It covered both Third Circuit and Ninth Circuit law separately. Which Circuit's law should we be following? Well, we urge the court to follow the Ninth Circuit's precedent and sing in Tapia Fierro. You know, we're well aware that that precedent is not binding. Well, that's your case of choice. But which law should we be following now? Well, the Third Circuit has acknowledged that where an alien does not challenge the final order of removal and challenges the underlying administrative proceedings, that habeas is appropriate. I think we're simply asking the court to sort of extend the reach of that rule to the circumstances attendant to sing in Tapia Fierro. Now, the government has asserted, and I think there's some merit to their assertion, that the holding in Singh v. Gonzalez on the issue that you're arguing before us has been recently called into question. Right. There have been administrative decisions which may have changed the procedure, but as the law stands now, that case has not been overruled either by the Ninth Circuit or by the Supreme Court of the United States as far as we're concerned. It is still good law. In light of the infirmities of the underlying removal proceeding, Verde was denied a fundamentally fair hearing in much the same way as an individual who was denied the effective assistance of counsel. As we saw from Singh and Tapia Fierro, habeas relief is appropriate in such a case. Now, as you've acknowledged, this circuit has not passed upon cases other than – I say that I'm out of time. You may finish your statement. Like I said before, we urge the Court to sort of extend the rule that has already acknowledged the circumstances that were attendant to Singh and Tapia Fierro. Thank you. Mr. Sandhu. Good morning, Your Honors. May it please the Court, Papu Sandhu on behalf of the respondents in this case. Your Honors, our principal argument in this case is that the Court lacks jurisdiction to review the collateral challenge to the 1998 removal order, which was issued approximately 13 years ago. However, let me begin by just assuring the Court of the underlying merits here. There is no constitutional defect that's been established in the 1998 removal proceedings. The argument that the phrase, way too many DUIs, is somehow procedurally defective and prejudicial. Was he just describing what the government was charging with that statement? Precisely, Your Honor. That's in the notice to appear. He was being charged based on a crime for DUIs, DUI with four priors. So that's simply what he was doing there. The record is clear that there was a – If there is jurisdiction, we vigorously contest that there is not. I understand. Then the gross miscarriage of justice test that's been set out in this Court's precedent in Debiato would apply. However, Your Honor, what's different from this case, from Debiato, is that Debiato did not involve application of the 30-day deadline for filing a petition for review that's set forth in Section 242B1. Also didn't involve the exhaustion. And it also didn't involve the exhaustion provision. The one thing I would stress to this Court is that the argument that the Court can review constitutional claims and questions of law under the Section 1252A2D provision does not apply in this case as it did in Debiato. Am I reading the other than this section parenthetical correctly based upon the question that I asked of Mr. Drum? The 1252A2D other than this section parenthetical. It says, Your Honor, nothing in subparagraph B, that's A2B, that's the discretionary review bar, or C, that's A2C, that's the criminal alien bar, or in any other provision of this chapter, and then it sets forth the rule of construction. Other than this section. Other than this section. So what does that mean? Well, the section includes, so everything other than Section 1252A2B and A2C, all of the other jurisdictional rules, exhaustion and time deadline provisions would not be subject to 1252A2D. So the Court has to grapple with that. The Cordova case in the Tenth Circuit is the only case to directly address this issue and has found that that rule applies to a collateral challenge to the underlying order. Your Honor, so we would say that this does not raise suspension clause concerns because of the opportunities that there were in this case to seek administrative and judicial review. So we don't think that St. Cyr is relevant in this context because, number one, we think in the 1998 proceedings there was that one bite at the apple. We think that the petitioner was informed of his appeal rights adequately and there was an opportunity to appeal. And, yes, Mr. Verdi-Rodriguez could have been Mr. Leocal if he had done so. But doesn't the requirement under the regulations for a non-technical definition, shouldn't the IJ have provided at least some explanation of what an aggravated felony was? I think he did, Your Honor, in the transcript. I mean, he set forth the description of the charge and the fact that his conviction of this charge was alleged by the Department of Homeland Security to be an aggravated felony. Yes, but shouldn't there have been some description of what that meant? Because certainly Leocal in 2004 changed the application. I mean, it seems like the regulation may at least hint at more descriptive language than was provided in 1998. I think, Your Honors, that the regulation was satisfied by, I mean, I don't think there's a sort of articulation requirement in the regulation that requires the immigration judge to, in detail, as would an opposing counsel suggest, to go into detail about the merit of challenging. This is not a guilty plea proceeding, so certainly we couldn't impose upon the IJ a requirement that he track through the elements of an offense and ask the immigrant if he indeed committed the offense because he's already been adjudicated as having committed the offense. Correct, and the immigration judge did that. But it would seem to me, based on Judge Fisher's question, is there a duty to describe more about the offense other than its title or its designation, which here was driving under the influence of intoxicating liquors modified by too many convictions for? I don't believe so, Your Honor. What does the regulation specifically say with respect to offenses that have been committed, if anything? Well, the regulation, the relevant part of the regulation, states that the immigration judge must read the factual allegation and the charges in the notice to appear to the respondent and explain them in non-technical language. Now, the immigration judge did ask the petitioner and the other aliens present whether they – well, actually, I'm sorry, he asked individually, the petitioner, whether he understood the nature of the proceedings. He did get a response to that, yes, sir. He then complied with the regulation by specifically reading the NTA, which the regulation requires. So if you look at the record on pages 70, Joint Appendix 72 through 74, there he specifically reads through the notice to appear as the regulation requires. So he did meet that requirement, and he did ask the petitioner whether he understood what was going on around him. And we think that satisfies due process in that context. Now, as for the other claim, the substantive claim that the – based on LEACAL, we would argue there that, again, Deviato sets out the proper analysis. Under Deviato, you look to whether or not the immigration judge or the board correctly followed the law, then in effect – the law then in effect, this proceeding took place in the Ninth Circuit, as Your Honors have already asked, was that there was no clear law in the Ninth Circuit, and there was Megales by the board. And so under Deviato, there was no grisly miscarriage of justice as to that issue. I want to come back around to jurisdiction because I think it's an important issue for the government. Can I ask you one other question about LEACAL? Didn't the Ninth Circuit make LEACAL retroactive in Camacho-Lopez? Camacho-Lopez, we believe, is distinguishable on several regards. So Camacho-Lopez, to answer your question, did apply LEACAL retroactively. But this Court has to look to its own circuit precedent with regard to the test that it applies. So Deviato is the proper test in this circuit. Now, it looks to Ninth Circuit law to determine what the law was then in effect to apply the Deviato test. So number one, Camacho-Lopez wouldn't be relevant because Deviato sets out the proper test in the circuit. Let me also say that Camacho-Lopez was a criminal case. It didn't cite the three civil cases – and this case, of course, is a civil case – three civil cases that don't apply LEACAL retroactively, which are discussed in our brief. Alvarenga, Areola-Areola, and we have another decision. Let me also point out the government, for whatever reason, in that Camacho case, conceded the issue. Now, that's obviously not the government's litigating position. And there was no explanation or discussion, in-depth discussion, of the retroactivity issue. The Supreme Court has held that a new judicial precedent decision applies retroactively only to cases that are open on direct review. So in this case, you had what I would say is the quintessentially closed case. You had someone who had been found deportable. The order had been issued by the immigration judge. They hadn't appealed. They had been deported. And at that point, you have a new decision issued several years later, and under the rule that the Supreme Court has set out, you wouldn't apply that retroactively. If the REAL ID Act applies here, when would the 30-day time limit start in this case? Would it, as your adversary argues, start as of when the order was reinstated, or would there be another time? We would argue it applied from the date that the original order was issued. So it would be in October of 1998. Now, let me just point out in case – so we think that's the proper position because the judicial review statute, the 30-day deadline, says that the 30 days run from the date of the removal order. If – I think what the petitioner would argue – The REAL ID Act wasn't passed until 2005. Right, but the 30-day deadline has been in effect since 1996 in the Legal Immigration Responsibility Act. The REAL ID Act, what it did was to take away habeas jurisdiction. So we don't think Kokovich is relevant at all. We think the 30-day deadline is clear. However, even if Kokovich is relevant, under Kokovich, the petitioner would not win because under Kokovich, what the Third Circuit said in those unique circumstances was that there would be a 30-day grace period from the date of the REAL ID Act. Right. Now, Mr. Debiato in the Debiato case – Well, how is this case different than Kokovich then? Because in Kokovich – The removal order was before the REAL ID Act. He filed a habeas petition after the REAL ID Act. Isn't that what this case is? Kokovich didn't involve a collateral attack to the removal order. Also, in Kokovich, the court actually dismissed the petition because he was outside the 30-day time period. This case falls right under there. Now, Debiato – This is to demonstrate what would have happened if the petitioner had actually gone into – He actually had another opportunity to go into district court. The same seat was decided in 2001. The record indicates that he came back in right away after his 2000 reinstatement. But he never tried to go into district court. There's a letter in the administrative record that indicates – one of the letters that was filed that indicates he came right back in. It's docket entry number six, letter number two. It says petitioner, quote, came right back to the United States after he was deported following the 2000 reinstatement. So St. Cyr was decided in 2001, never filed a habeas petition. REAL ID Act was passed in 2005. Then there's the notice that Kokovich talked about. You have 30 days. Well, your adversary said that that should be excused because he wasn't in the country. Is that an excuse that would be valid for not filing within 30 days of the passage of the REAL ID Act? Well, he wouldn't be in custody. He could have tried to file the motion to reopen from abroad. I mean, the whole point of this sort of finality rule is that there's not going to be an incentive to come back into the country. I mean, we don't want to create an incentive to say, okay, well, just illegally enter the country and then you can take advantage of this case. It seems to me that the rule they're asking for and could have some applicability with future potential immigration developments is that nothing happens no matter where we are until you try to remove us again and reinstate the initial removal order. And then we get 30 more days on the clock. Right. See, but that's- What's wrong with that? That's directly contrary to what Congress is trying to do in these cases. Now, Congress has enacted 1326D in the criminal context and has sanctioned such collateral attacks. But that's clearly different because what you're doing in the criminal context is you're attaching a new criminal penalty. So a criminal prosecution is something different. Right. What Congress has done in the civil context is it's enacted the reinstatement statute, which itself we haven't talked about it. But, I mean, the reinstatement statute itself says that there's no review of the underlying order. Congress is clearly trying to not allow for collateral attacks in the civil context as it's doing in the criminal context. So to have another 30 days every time there's a reinstatement would allow for there to be multiple attacks every time the law shifts or every time there's an allegation of a new constitutional defect in the original proceedings. There's clearly a distinction here that Congress is making. So we don't think that the Mendoza-Lopez line of cases or 1326D, too, Congress intended to incorporate into the civil context. If there are no more questions, Your Honor, we ask that the Court dismiss the petition for review for lack of jurisdiction. Thank you. Thank you. Mr. Drumm, we'll have you back in the bubble. I know you did not argue the habeas aspect originally, but is Mr. Verde Rodriguez still in custody? No, he's living across the border in Mexico at this time. Would habeas lie here? I think he had, what, one year? What was his? One year from what, Your Honor? A one-year term of supervised release that I would presume is completed now. So he's under no form of custody or detention? No, but he's been ordered, deported from the country subject to the last reinstatement order. So although he's not in custody, we believe habeas still lies here. As the government points out, judges are required to state the charges and then explain them. And in this case, all that was done was stating that Mr. Verde was an aggravated felon. He did not explain in non-technical language. There is no non-technical language on the record as far as describing what an aggravated felony is. There's no case law, by the way, that explains what that means, is there? Non-technical language? Yes. Not that I know of, Your Honor. Okay. But merely stating the charge cannot possibly constitute an explanation of the charge in non-technical language because that's merely the surface, that's a superficial description of what was wrong, that he was an aggravated felon that was not described or explained to him in any way. There is no explanation, let alone explanation in non-technical language. But the one thing about the regulation is it does say that the IJ has to read the factual allegations and charges in the notice to appear and explain them in a non-technical way. It doesn't say that they have to explain all the issues that may apply to this particular appeal. Right. And we're not arguing that the judge did not state the facts or state the charges, but he did not explain the charges in a non-technical way. He merely stated that Verde was an aggravated felon. There was a division of authority among the circuits at the time of Verde's removal, and the immigration judge's comment indicated that the law at the time was settled and clear, and this is simply not the case. It can be shown through Camacho-Lopez that the law at the time was clearly so wrong that, you know, the Camacho-Lopez court felt it could be settled wrongly, but it could still be settled. I'm sorry, I don't understand your question. I think we'll leave it at that. Your time is up in any event. We thank all of counsel for a very well-argued case. Thank you. Thank you, Your Honors. Ethan Rowe with the DK program. First of all, I'd like to thank the court for allowing our students to argue. It's a great honor for them to do so. And just as my role as supervising attorney, I think it's my responsibility when I hear somebody say, in the petitioner's interest, there's a mistake. I think that the petition for habeas corpus was filed at the time while he was in the United States in ICE custody. My understanding of the case law is that if the person who is in custody files a habeas petition, it's then removed and the court obtains jurisdiction over the habeas petition. Again, thank you very much. Thank you.